**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) SUE BENEDICT, as Administrator of the Estate of DAGNEY ELLIS BENEDICT, a.k.a. NEX BENEDICT, a deceased minor,  )<br>)<br>)<br>)<br>  **Plaintiff,**  )<br>)<br>v.  )<br>)<br>(2) INDEPENDENT SCHOOL DISTRICT NO. 11, a/k/a OWASSO PUBLIC SCHOOLS;  )<br>)<br>)<br>)<br>)<br>)<br>  **Defendants.**  ) | Case No. 25-cv-00321-MTS<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Sue Benedict, as Administrator of the Estate of DAGNEY ELLIS BENEDICT, a.k.a. NEX BENEDICT, deceased (hereafter referred to as "NEX BENEDICT"), and by and through her attorneys of record, for her complaint against Defendant Independent School District No. 11, a.k.a. Owasso Public Schools ("Owasso Public Schools" or the "School District"), alleges and states as follows:

1. For years, Owasso Public Schools has ignored reports of bullying and sexual harassment of its students, including NEX BENEDICT.

2. Owasso Public Schools received numerous reports that NEX was constantly being bullied and harassed by other students based on NEX's gender identity.

3. But Owasso Public Schools refused to take those reports seriously.

4. Eventually, the constant bullying and harassment from NEX's classmates and the indifference and hostility from the School District became too much. NEX committed suicide on February 8, 2024, at the age of just sixteen.

1

5. The United States Department of Education, Office for Civil Rights (OCR), launched an investigation of Owasso Public Schools in response to NEX's death. On November 13, 2024, OCR issued the results of its investigation, which included the following finding: "**Based on the established pattern of inconsistency in District responses to reports of sexual harassment, OCR determined that the District responded with deliberate indifference to some families' sexual harassment reports … .**"

6. That deliberate indifference on the part of Owasso Public Schools to known bullying and sexual harassment was a direct cause of NEX's death.

7. This lawsuit seeks justice for NEX and to correct the failures of the institution that was supposed to protect them.

## I.     THE PARTIES

8. Plaintiff Sue Benedict is the mother of DAGNEY ELLIS BENEDICT, deceased, and the duly appointed Administrator of the Estate of DAGNEY ELLIS BENEDICT. Plaintiff is a citizen of the State of Oklahoma and a resident of Tulsa County, Oklahoma.

9. Defendant Owasso Public Schools is a public educational institution located in Tulsa County, Oklahoma, and is an Oklahoma school district organized and existing under the laws of the State of Oklahoma with its principal office in Tulsa County, Oklahoma. Owasso Public Schools receives federal funding and is subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, and 42 U.S.C. § 1983. Owasso Public Schools may be served with process at its principal place of business: Attn: Owasso Board of Education, 1501 N. Ash Street, Owasso, OK 74055.

## II. JURISDICTION & VENUE

10. Plaintiff has alleged claims arising under federal law, which means this Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.

11. This Court also has subject matter jurisdiction under 28 U.S.C. § 1343, which gives district courts original jurisdiction over any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

12. Pursuant to 28 U.S.C. § 1367, this Court also has subject matter jurisdiction over pendent state law claims regarding the violation of the Oklahoma Constitution, state statutes, and common law torts.

13. Venue is proper in this district, as the Defendants do business in this district, the events giving rise to the claims occurred (at least in part) in this district, and the Defendants reside and/or have their principle place of business in this district.

## III. FACTUAL BACKGROUND

14. Plaintiff brings this action to recover damages for the wrongful death of and constitutional deprivations suffered by her child, DAGNEY ELLIS BENEDICT (NEX BENEDICT), who died on February 08, 2024, as a result of the gross failures and deliberate indifference of Defendant Owasso Public Schools and its teachers, staff, and employees.

15. Around NEX's eighth-grade year at Owasso Public Schools, NEX started expressing a different gender identity than the one NEX was assigned at birth. And, almost

immediately thereafter, NEX was subjected to severe and persistent bullying, harassment, and discrimination at Owasso Public Schools because of their gender identity, expression, and appearance. NEX was subjected to verbal abuse, physical assault, sexual harassment, cyberbullying, social isolation, and humiliation by other students on a regular basis.

16. The bullying and harassment that NEX received was open and obvious to teachers and other Owasso Public Schools employees—as was the fact that such bullying and harassment was because of NEX's gender.

17. NEX and/or Plaintiff also reported the bullying and harassment to staff at Owasso Public Schools on multiple occasions.

18. But, despite these reports and the School District's knowledge of NEX's constant abuse, the School District failed to take any adequate or effective measures to stop, prevent, or remedy the abuse. Instead, the School District ignored, minimized, or blamed NEX for the bullying and harassment NEX endured.

19. For example, during the 2021-2022 school year, NEX made multiple reports to a teacher at the School District's Eighth Grade Center that other students were harassing them, calling NEX names like "fag" and "queer." The teacher reported these incidents to the building's principal. But no one from the School District took any action in response.

20. As a result of this constant ridicule and abuse, NEX left the District for a short time.

21. When NEX re-entered the district in March of 2023, NEX's mother met with School District officials to address NEX's gender status, the abuse NEX had endured, and the expectations for how NEX should be treated going forward.

22. The abuse directed at NEX (and the School District's indifference to it) resumed almost immediately thereafter. For example, that same spring of 2023, during an assembly in the

school gymnasium, NEX reported other students yelling at NEX and their friends names like "dyke," "queer," and "fag." NEX told the bullies to "shut up." The School District's response to this incident was to send NEX home for the way NEX responded to the harassment; nothing was done to address the bullying that NEX suffered.

23. The bullying and abuse intensified over the 2023-2024 school year. That fall semester, NEX was being subjected to harassment and ridicule on a daily basis. Students were openly denigrating NEX in the school cafeteria, auditorium, hallways, and classrooms—slurring NEX with names like "faggot" and "dyke" in plain view and earshot of School District staff. NEX was also being pelted with paper balls and water bottles. The abuse was so bad and so rampant that NEX would bring it up at home multiple times a week.

24. As before, NEX's mother reported this abuse to School District officials, including a school counselor and assistant principal. NEX's mother made at least three separate reports during the fall 2023 semester.

25. But, as with the previous reports, the School District took no action to address or abate the abuse. Nor did they offer resources to NEX to help remedy the abuse or the toll it was already taking on NEX's wellbeing. NEX was in pain, their grades were slipping, and no one from the School District would do anything to help.

26. Around the week of February 07, 2024, NEX was placed into in-school suspension (ISS) along with another group of students. Throughout that week, three of the students in the group proceeded to bully NEX in the same fashion detailed above—ridiculing NEX for their appearance, throwing things at NEX, and calling NEX a "faggot" and "queer."

27. Upon information and belief, School District policy required teachers and/or staff acting as ISS monitors to keep these students within the staff's line of sight at all times—meaning

5

this abuse also would have taken place directly in front of School District staff, and the School District, therefore, would have had actual knowledge of this ongoing sexual harassment, bullying, and abuse.[1] Yet no School District employee reported this abuse to their superiors, to NEX's parent, or to anyone else.

28.     At one point during that week, NEX told their mother regarding the constant abuse: "I can't take much more of it."

29.     On February 7, 2024, the group of bullies began to harass and bully NEX as they had the rest of that week, and it carried over as the group of students made their way into one of the high school bathrooms. Fed up and frustrated, NEX went to one of the sinks in the bathroom and threw water on the bullies. The bullies then jumped, pinned, and proceeded to beat NEX in the bathroom until NEX lost consciousness and a coach working as the ISS monitor finally broke it up. NEX sustained bodily injuries, including injuries to the head and face.

30.     Principals at the school responded to this incident and contacted NEX's mother to come collect NEX from school. Upon arriving, NEX's mother told the School District officials that the other students involved in the fight had been bullying NEX. But even then—after the bullying had reached a level of actual physical harm—School District officials refused to address it or inquire further.

31.     After leaving the school, NEX's mother took NEX to Bailey Medical Center for treatment for the injuries suffered during the bathroom beating.

---

[1] The subsequent investigation into this incident by the United States Department of Education, Office for Civil Rights (discussed *infra*) reached a similar conclusion, noting: "That this harassment of gender-nonconforming students occurred within the context of an in-school placement, supervised by High School staff, suggests that ***the District did have actual knowledge of conduct that could meet the regulatory definition of sexual harassment for [NEX BENEDICT]***."

6

32. NEX left the hospital and returned home later that day, where NEX would later ingest a combination of household medications.

33. The following afternoon, NEX collapsed on the floor, struggling to breathe, eyes rolling back.

34. NEX's mother witnessed that horror, called 911, and had NEX rushed to a local hospital, where NEX was ultimately pronounced dead.

35. Police records and an autopsy report of the Chief Medical Examiner of Tulsa indicate that NEX died by suicide.

36. After NEX died, the School District received numerous additional reports about the harassment and bullying NEX had to endure at school, most of which confirmed that the abuse was based on NEX's sex / gender. One report described the environment on campus as "a school environment and culture that promotes bullying and abuse especially when it comes to LGBTQ+ students." Another report confirmed NEX's mother's repeated public pleas regarding the "anti-trans bullying" NEX was suffering.

37. Yet, even after the School District learned of NEX's death, saw these additional reports about the disturbing "culture" in its schools—and acknowledged that there were other gender non-conforming students in the ISS class with NEX that received similar abuse—the School District still chose ***not*** to conduct a proper investigation, notify the parents of the other affected students, or offer supportive services to these victims.

38. Shortly after NEX's passing, a complaint was filed with the United States Department of Education (Department), Office for Civil Rights (OCR), alleging that the District discriminated against students by failing to respond to sexual harassment, of which it had notice, at Owasso High School during the 2023-2024 school year.

39. OCR investigated the complaint by interviewing over twenty current and former District teachers, administrators, students, and parents, and by reviewing documentation from the District, including two Title IX investigations and *60* online bullying reports from the 2021–2022, 2022–2023, and 2023–2024 school years—24 of which OCR identified as reports of possible sexual harassment, and *15 of which* related to NEX.

40. OCR's investigation found that the School District generally failed to fulfill its obligations with respect to investigating and addressing reports of sexual harassment during the 2021–2022, 2022–2023, and 2023–2024 school years. The District repeatedly "investigated" allegations of sexual harassment about which it had actual knowledge entirely outside the required process, failed to notify complainants about how to file a formal complaint, and failed to offer victims supportive services. For example, when a counselor reported that a teacher had been grooming female high school students through frequent social media messages, multiple School District administrators, including the Title IX Coordinator, admitted that the School District did not conduct a proper investigation and, instead, addressed the issue as a personnel matter that resulted merely in the accused teacher's resignation.

41. The OCR investigation also uncovered a disturbing lack of basic understanding within the School District for how it was supposed to handle reports and evidence of sexual harassment, even according to the School District's own written policies. For example, multiple staff members were unable to identify the District's Title IX Coordinator—the School District official charged with overseeing the School District's obligations with respect to reporting, investigating, and addressing sexual harassment on campus. And, even if they knew who the Coordinator was and reported sexual harassment to him, the Title IX Coordinator himself told OCR that he was "not confident" in his ability to even determine what constitutes sexual

8

harassment or sex discrimination. Likewise, the staff member that the School District identified as its official "Investigator" of such matters, "maintained during her OCR interview that she is not the Title IX Investigator and said that there is no such role in the District."

42. OCR determined that the School District violated operative federal regulations designed to protect against sexual harassment in schools by: (1) failing to properly respond to notice that students, including NEX, were subject to sexual harassment; and (2) not adopting adequate policies and procedures to address complaints of sexual harassment, including policies for properly documenting reports of sexual harassment.

43. OCR's investigation revealed a widespread "pattern" of inappropriate responses from the School District to allegations and evidence of sexual harassment, and that such failures were known to School District policy makers all the way up to the board of education. The OCR described its findings as follows:

> District records and administrator interviews reflect a pattern of inconsistent District responses to reports under Title IX, further reflecting the District's violation of its Title IX nondiscrimination obligations. The District opened a formal Title IX investigation based on a mother's report [about a male coach] and ultimately—after a parent spoke at a school board meeting and to the District Superintendent to express dissatisfaction with a school-level investigation not conducted under Title IC—opened another Title IX investigation of allegations that a student had called another student "fag" or "faggot" (Student H). However, the records show that *the District neither opened an investigation nor even described to families how to file a formal complaint when it received 24 reports of conduct that met the definition of sexual harassment*. These 24 reports described conduct such as "repeated remarks which were sexual in nature and mainly referring to acts of sodomy" directed at a very young elementary school student (Student F), repeated sexually harassing comments from a male student to a female elementary school student at school and on the bust (Student E), and calling a student "gay" and slamming his head into a table causing the student to miss school or change his routines (Student D).

44. OCR also determined that, "Based on the *established pattern of inconsistency in District responses to reports of sexual harassment*, … the [School] District responded with *deliberate indifference* to some families' sexual harassment reports …."

45. These same failures, and the culture of indifference to sexual harassment that they demonstrate, also deprived NEX of their rights under the Due Process and Equal Protection Clauses of the United States Constitution.

46. As a direct and proximate result of the School District's actions and inaction, NEX suffered severe and irreparable harm to their physical, mental, and emotional health and wellbeing. NEX experienced physical injury, anxiety, depression, post-traumatic stress disorder, suicidal ideations, and self-harm. NEX also suffered academic decline, loss of educational opportunities, and deprivations of their right to personal security and bodily integrity, as well as their right to be free from discrimination on the basis of sex. Ultimately, the School District's indifference to NEX and the sexual harassment and abuse they suffered cost NEX their life.

47. The School District could have prevented this tragedy had it taken sexual harassment and bullying seriously.

48. No child—regardless of their sex, gender, religion, culture, creed, political affiliations, or beliefs—should ever have to go through what NEX did.

## IV. CAUSES OF ACTION

### Count 1 – Violations of 42 U.S.C. § 1983

44. Plaintiff re-alleges and incorporates by reference all the foregoing allegations as if set forth fully herein.

45. Under the Fifth and Fourteenth Amendments, NEX had the right to Due Process and Equal Protection of the law.

46. As part of those rights, and at all times relevant hereto, NEX enjoyed the right to life, personal security, and bodily integrity, as well as the right to be free from discrimination on the basis of sex.

47. At all times relevant hereto, Defendant Owasso Public Schools was a state actor acting under the color of state law.

48. Defendant deprived NEX their rights to Due Process and Equal Protection of the law by enacting inadequate policies (including failing to enact policies) regarding reporting, investigating, and addressing of alleged and/or suspected sexual harassment, bullying, and abuse.

49. As evidenced by the "pattern" discovered during OCR's investigation, there was a clearly established custom/practice of School District officials failing to properly investigate, report, and/or act upon allegations and evidence of sexual harassment, bullying, and abuse in Owasso Public Schools.

50. This custom/practice of School District officials failing to properly investigate, report, and/or act upon allegations and evidence of sexual harassment, bullying and abuse on campus was known to School District policy makers, including building principals and Owasso Public Schools's Title IX coordinator, superintendent, and board of education.

51. The School District knowingly chose <u>not</u> to correct these failures, but to permit and perpetuate this inappropriate custom/practice with full awareness that the continued failure to properly investigate, report, and/or act upon allegations and evidence of sexual harassment, bullying, and abuse was substantially certain to result in the violation of students' constitutional rights—including their rights to personal security, and bodily integrity, as well as the right to be free from discrimination on the basis of sex.

52. The School District's policy of inaction in response to allegations and evidence of sexual harassment, bullying and abuse directly caused NEX to suffer physical, mental, and emotional abuse, depriving NEX of their rights under the Due Process and Equal Protection Clauses. School District employees—acting pursuant to that established custom/practice—failed

to report open and obvious evidence of NEX's sexual harassment and abuse to School District officials, NEX's parent[s], or law enforcement; failed to investigate when NEX, NEX's mother, or others reported such harassment and abuse; downplayed and discounted the severity of NEX's and others reports of such harassment and abuse; and failed to take any action to abate the known, ongoing harassment and abuse NEX was suffering. Each of these failures perpetuated NEX's abuse and the damages suffered as a result.

53. Defendant deprived NEX their rights to Due Process and Equal Protection of the law by failing to properly train its employees regarding how to report, investigate, and address alleged and/or suspected sexual harassment, bullying, and abuse.

54. As evidenced by the inability of School District employees to identify critical members in the District's sexual-harassment response protocols (*i.e.*, Title IX Coordinator and Investigator), the general confusion regarding roles and responsibilities in response to allegations and evidence of sexual harassment, and the inability of School District officials to even define and/or identify sexual harassment, there was a clear lack of adequate training on how the School District and its employees were supposed to investigate, report, and/or act upon allegations and evidence of sexual harassment, bullying, and abuse in Owasso Public Schools.

55. The School District knowingly chose <u>not</u> to correct, but to continue its deficient training practices, despite the mounting reports of bullying, harassment, and abuse; the numerous instances of mishandled investigations / responses; and the open an obvious "culture that promotes bullying and abuse" on its campuses. The School District's history in this regard also shows that the School District's policy makers knew to a moral certainty that their employees would continue to confront allegations and evidence of bullying, sexual harassment, and abuse like what happened to NEX in this case; that such situations may confront School District employees with difficult

choices about how to properly respond to such allegations / evidence—the sort of difficult choices that better training or supervision could make less difficult; and that the wrong choice in these situations would frequently cause serious harm to students, as NEX suffered here.

56. The School District's deficient training policies regarding how to respond to allegations and evidence of sexual harassment, bullying and abuse directly caused NEX to suffer physical, mental, and emotional abuse, depriving NEX of their rights under the Due Process and Equal Protection Clauses. School District employees—acting under that deficient training—failed to report open and obvious evidence of NEX's sexual harassment and abuse to School District officials, NEX's parent[s], or law enforcement; failed to investigate when NEX, NEX's mother, or others reported such harassment and abuse; downplayed and discounted the severity of NEX's and others reports of such harassment and abuse; and failed to take any action to abate the known, ongoing harassment and abuse NEX was suffering. Each of these failures perpetuated NEX BENEDICT's abuse and the damages suffered as a result.

57. Defendant also affirmatively acted to create and/or increase NEX BENEDICT's exposure and vulnerability to, and/or danger from, the bullying, sexual harassment, and abuse.

58. Sexual harassment, bullying, and abuse of students at school and during school hours is a known danger to students.

59. "A school environment and culture that promotes bullying and abuse" is a dangerous environment for students. That "environment and culture," as it existed at Owasso Public Schools, was particularly dangerous for gender-nonconforming students like NEX BENEDICT.

60. Owasso Public Schools created that danger and/or increased NEX BENEDICT's vulnerability to that danger by ignoring repeated allegations and evidence of sexual harassment,

bullying, and abuse against NEX BENEDICT and other gender-nonconforming students; not immediately separating the bullies from these students but, instead, rounding up the gender-nonconforming students and affirmatively placing them in a small, isolated classroom with their abusers and allowing the abusers unfettered, unsupervised access to these students in compromising areas like the school bathrooms; not immediately reporting the allegations and evidence of sexual harassment, bullying and abuse to authorities and/or the students' parents; and/or not offering supportive services to the victims of this sexual harassment, bullying, and abuse.

61. Owasso Public Schools's actions and inactions also stripped necessary aid from NEX BENEDICT and others and thereby created an opportunity for bullies to continue to abuse NEX BENEDICT and other students. Properly reporting, investigating, and addressing the open and obvious abuse these students received at Owasso Public Schools could have abated these harms and protected NEX BENEDICT and other students from their abusers' predatory behavior. Instead, the School District's failure to act allowed the bullying and abuse to persist unabated, in direct violation of NEX BENEDICT's constitutional right to bodily integrity and personal security.

62. Owasso Public Schools's conduct put NEX BENEDICT and others like them at substantial risk of serious, immediate, and proximate harm. That risk included the risk of being abused while at school and during school-sponsored activities. Indeed, NEX BENEDICT and other students *were* harmed *after* Owasso Public Schools had actual notice of ongoing bullying, sexual harassment, and abuse.

63. The risk of danger from sexual harassment, bullying, and abuse was obvious and/or known to Owasso Public Schools.

64. Owasso Public Schools acted recklessly in conscious disregard of this risk, repeatedly ignoring, discounting, and downplaying reports of sexual harassment, bullying, and abuse and allowing bullies and abusers to continuing harming students unabated.

65. Owasso Public Schools's conduct shocks the conscience.

66. 108. Rather than fulfill its legal and moral obligations to protect minor students from foreseeable harm, School District administrators ignored clear red flags and, through their inaction, affirmatively enabled others to continue abusing and traumatizing a young, vulnerable student under the School District's supervision. This level of institutional disregard for student safety—and deliberate indifference to students' constitutional rights—is not only unconscionable, but constitutionally intolerable.

67. Defendant deprived NEX BENEDICT of their right to Equal Protection of the law because Owasso Public Schools's deliberately indifferent response to the known sexual harassment of NEX BENEDICT was because of NEX BENEDICT's gender. As others indicated, Owasso Public Schools fostered "a school environment and culture that promotes bullying and abuse *especially when it comes to LGBTQ+ students*." Owasso Public Schools officials, including officials with authority to take corrective action, had actual knowledge that NEX BENEDICT was being harassed and based on the reports of that abuse, that such harassment was because of NEX BENEDICT's sex and gender identity. Nevertheless, as it did on other occasions uncovered during the OCR's investigation, Owasso Public Schools downplayed and ignored these reports, evidencing a clear distinction in the way it treated allegations and evidence of sexual harassment to gender-nonconforming students like NEX BENEDICT versus other students. Owasso Public Schools also knew full well that the failure to properly act upon such allegations and evidence of sexual harassment was substantially certain to result in the violation of NEX BENEDICT's

constitutional rights, including NEX BENEDICT's rights to personal security, and bodily integrity; to deprive NEX BENEDICT of educational benefits; and to cause significant physical and emotional harm.

68. Owasso Public Schools's failings as described above resulted in NEX BENEDICT and other students suffering severe emotional distress, psychological damage, significant pain and suffering, physical injuries, and personal humiliation. The School District's failures also directly contributed to NEX BENEDICT's death.

### Count 2 – Wrongful Death / Negligence

69. Plaintiff re-alleges and incorporates by reference all the foregoing allegations as if set forth fully herein.

70. Owasso Public Schools is responsible for the acts and omissions of its employees done within the course and scope of their employment.

71. At all relevant times described in this Complaint, the Owasso Public Schools teachers, staff, and administrators described in the forgoing paragraphs were acting in the course and scope of their employment with Owasso Public Schools.

72. Owasso Public Schools is also responsible for its own acts and omissions with respect to hiring, supervising, and training of employees.

73. Owasso Public Schools and its agents and employees owed a duty to NEX BENEDICT and all other students under its protection to use reasonable care to protect students from sexual harassment, bullying, and abuse.

74. Owasso Public Schools, on its own and through its employees, breached that duty of care by, among other things: failing to properly investigate, report, and/or act upon allegations and evidence of sexual harassment, bullying, and abuse of NEX BENEDICT; failing to adopt

adequate policies and procedures to address complaints of sexual harassment; failing to properly train and supervise its employees regarding how to report, investigate, and address alleged and/or suspected sexual harassment, bullying, and abuse; and failing to properly supervise students known to sexually harass, bully, and abuse NEX BENEDICT during school hours when the School District and its employees knew those students would be around and interacting with NEX BENEDICT.

75. As a direct and proximate cause of Defendant's negligence, and the negligence of its employees, Plaintiff and NEX BENEDICT incurred significant damages, including damages for bodily injuries, mental pain and anguish, grief and loss of companionship, a lifetime's worth of NEX BENEDICT's contributions to their family and community, medical and burial expenses, and other damages and pecuniary losses.

76. Defendant's conduct also involved a reckless or callous indifference to NEX BENEDICT's rights in that Defendant acted in the face of and contrary to a perceived risk that its actions and the actions of its employees violated NEX BENEDICT's rights, as set forth above. Defendant was aware, or simply did not care, that there was a substantial risk that the policies and customs it promulgated, the practices it condoned, and the negligence and indifference of its agents and employees would—and were—causing serious harm to NEX BENEDICT and other students like NEX BENEDICT.

77. On January 7, 2025, Plaintiff properly served Defendant Owasso Public Schools with a Notice of Tort Claims pursuant to the Oklahoma Governmental Tort Claims Act. Defendant acknowledged receipt of such Notice on January 9, 2025. Plaintiff provided supplemental information in response to the School District's request on January 17, 2025. Thereafter,

Defendant did not respond and the claim was deemed denied after 90 days. The present lawsuit is filed within 180 days of being deemed denied.

## V. PRAYER

WHEREFORE, premises considered, Plaintiff respectfully requests judgment in her favor and against Defendants as follows:

    a.    an award of compensatory damages to be determined by the jury;

    b.    an award of attorneys' fees and costs of litigation;

    c.    pre- and post- judgment interest as allowed by law; and

    d.    all other relief to which the Court or jury deems Plaintiff is entitled.

Respectfully submitted,

/s/ Ross L.

_____
Bradley E. Beckworth, OBA No. 19982
Ross Leonoudakis, OBA No. 34570
Nathan B. Hall, OBA No. 32790
NIX PATTERSON, LLP
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
*Bbeckworth@nixlaw.com*
*Rossl@nixlaw.com*
*Nhall@nixlaw.com*

Jacob Biby, OBA No. 22063
BIBY LAW FIRM
6305 E. 120th Ct., Ste. F
Tulsa, OK 74137
Telephone: (918) 574-8458
*Jacob@bibylaw.com*

**ATTORNEYS FOR PLAINTIFF**